# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BONNIE ECKENRODE, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:13-cv-231 |
| | ) |
| v. | ) Judge Mark R. Hornak |
| | ) |
| CAROLYN W. COLVIN[1], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff Bonnie Eckenrode ("Ms. Eckenrode") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), who denied her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383(f), respectively.

### I.     BACKGROUND AND FACTS

Ms. Eckenrode was born on October 18, 1960. ECF No. 6-2 at 33. She has a high school education. *Id.* at 34. Ms. Eckenrode was last consistently employed in 2006 as a greeter at Wal-Mart. *Id.* Prior to that, she held jobs as a cashier at a farmer's market and at a nursing home doing laundry.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History–Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (visited on January 22, 2014). Consequently, Acting Commissioner Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); Fed. R. Civ. P. 25(d).

1

*Id.* at 34-35. Most recently, she worked for approximately a month as a laborer in a recycling plant in November 2008 until her position was eliminated. *Id.* at 36.

Ms. Eckenrode alleges disability as of January 21, 2010 due to various physical and mental impairments, including anxiety, depression, asthma, and other respiratory issues. *Id.* at 35-38; ECF No. 6-6 at 33. The record reflects that she has not engaged in substantial gainful work activity since alleging disability in January 2010. Ms. Eckenrode initially filed an application for SSI and DIB on June 18, 2009, in which she claimed total disability since May 1, 2006.[2] ECF No. 6-2 at 18. The State Agency denied her claims on December 15, 2009. *Id.* An administrative hearing was held on April 5, 2011 before Administrative Law Judge Brian Wood ("ALJ"). *Id.* Ms. Eckenrode was represented by counsel and testified at the hearing. *Id.* Karen Krull, an impartial vocational expert ("VE"), also testified at the hearing. *Id.*

On May 19, 2011, the ALJ rendered a decision unfavorable to Ms. Eckenrode in which the ALJ found that she was not under a disability within the meaning of the Act from May 1, 2006 through the date of the decision. *Id.* at 27. The ALJ's decision became the final decision of the Commissioner on January 25, 2013, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. *Id.* at 2-4.

On February 12, 2013, Plaintiff filed her Complaint in this Court, seeking judicial review of the decision of the ALJ. ECF No. 3. The parties have filed Motions for Summary Judgment, ECF Nos. 10 and 12, and respective Briefs in Support, ECF Nos. 11 and 13. Ms. Eckenrode has filed a response to the Commissioner's Motion for Summary Judgment. ECF No. 14. She contends that the ALJ erred in

---

[2] Ms. Eckenrode originally alleged disability as of May 1, 2006. ECF No. 6-2 at 18. At the hearing, her attorney amended the onset date to December 1, 2009. *Id.* at 52. Ms. Eckenrode then filed a waiver changing her onset date to January 21,

2

numerous respects – by failing to find that her condition met or equaled one of the Listed Impairments found at 20 C.F.R. § 404, subpt. P, app. 1, by giving little weight to the medical opinions of treating providers and a consultative examiner, by erroneously determining her Residual Functional Capacity ("RFC"), by disregarding the testimony of the VE and relying on an incomplete hypothetical question, and in failing to find that Ms. Eckenrode was disabled pursuant to the Medical-Vocational Guidelines found at 20 C.F.R. § 404, subpt. P, app. 2. The Commissioner contends that the decision of the ALJ should be affirmed, as it is supported by substantial evidence. The Court agrees with the Commissioner and will therefore grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

## II.     STANDARD OF REVIEW

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g), 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002) ("This test

---

2010 on April 21, 2011. ECF No. 6-6 at 33.

3

[whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. Compare 20 C.F.R. § 416.920 with § 404.1520."); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d Cir. 2000) (stating claimants' burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a Listed Impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. § 404, subpt. P, app. 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

4

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes her from returning to her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once the claimant shows he is unable to resume her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one such impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. ECF No. 6-2 at 26. The ALJ concluded that while Ms. Eckenrode did have a number of severe impairments – chronic obstructive pulmonary disease, asthma, obstructive sleep apnea, degenerative joint disease of the left ankle, obesity, Type II diabetes mellitus, major depressive disorder, generalized anxiety disorder, and panic disorder – she did not have

an impairment or combination of impairments that "met or medically equaled" a Listed Impairment during the relevant period.³ *Id.* at 20-22. The ALJ then found that Ms. Eckenrode retained the RFC to perform light work as defined at 20 C.F.R. §§ 404.1567(b) and 416.967(b), with a number of specific limitations:

1) Ms. Eckenrode could lift and carry 20 pounds occasionally and 10 pounds frequently;
2) She could stand or walk for 6 hours of an 8-hour workday;
3) She could sit for 6 hours of an 8-hour workday;
4) She required a sit/stand option every 30 minutes;
5) She could occasionally push or pull with her bilateral upper extremities and bilateral lower extremities;
6) She could frequently balance;
7) She could occasionally climb, stoop, and crouch;
8) She could never crawl or kneel;
9) She must avoid concentrated exposure to extreme heat and cold, as well as humidity, fumes, odors, dusts, gases, and poor ventilation;
10) She was able to perform simple routine repetitive tasks;
11) She required low stress work, defined as occasional simple decision making with occasional changes in the work setting;
12) She could have occasional interaction with co-workers and supervisors; and
13) She could have no interaction with the public.

*Id* at 22.

In making this determination, the ALJ first considered Ms. Eckenrode's subjective complaints of physical symptoms and found that while her medically determinable impairments could reasonably be expected to cause the symptoms she claimed she suffered, her complaints exceeded the severity of impairment shown by the objective medical evidence and were not credible to that extent. *Id.* at 24. The ALJ noted that the medical records showed Ms. Eckenrode was diagnosed with poorly controlled asthma and sleep apnea in July 2009. *Id.* However, he pointed out that chest x-rays of Ms. Eckenrode

---

³ The ALJ explicitly considered Listings 1.00 (musculoskeletal system), 3.00 (respiratory system), 9.00 (endocrine system), 12.04 (affective disorders), and 12.06 (anxiety related disorders). ECF No. 6-2 at 21. He found no evidence that Ms. Eckenrode's obesity increased the severity of any of her alleged impairments to the degree that, individually or combined, they met or equaled a Listed Impairment.

6

in May 2009 were normal, follow-up x-rays in August 2009 showed no active disease and normal lung capacity, and pulmonary function tests in October 2009 showed no significant obstruction. *Id.* The ALJ also noted that by April 2010, Ms. Eckenrode's asthma was under fair control, and she was walking approximately 1-4 miles per day. *Id.* The ALJ found nothing in the record to explain Ms. Eckenrode's testimony at the hearing that about one year later she could only walk approximately 50 feet at a time. *Id.* Ultimately, taking into account the combined effect of Ms. Eckenrode's mild degenerative joint disease in her left ankle, her obesity, various respiratory ailments, and sleep apnea, the ALJ found that she could perform work at the light exertional level with the further "postural and environmental limitations" he included in her RFC. *Id.*

With regard to Ms. Eckenrode's alleged mental impairments, the ALJ acknowledged that Ms. Eckenrode's treating psychologist, Dr. Randon Simmons ("Dr. Simmons") diagnosed her with major depressive disorder and generalized anxiety disorder in March 2009 and gave her a global assessment of functioning ("GAF") score of 55, indicating moderate symptoms. *Id.* He also noted that in January 2010, Dr. Simmons diagnosed Ms. Eckenrode again with major depressive disorder and also with panic disorder, and gave her a GAF score of 40, indicating serious symptoms. However, the ALJ attributed this score to what Dr. Simmons described as the "situational stressor" of Ms. Eckenrode's difficulties with her sister, a subject to which she testified at length at the hearing. The ALJ also emphasized that by July 2010, Ms. Eckenrode reported that her mood was a "5/10," that was she was experiencing much less stress, and was sleeping "great," that she had never been hospitalized for mental issues, and that she performed "extensive" daily activities such as taking care of her grandchildren, doing household chores, reading, watching television, and playing video games. *Id.* at

7

25. On that basis, the ALJ concluded that Ms. Eckenrode's mental impairments would not prevent her from performing low stress, unskilled work with minimal interpersonal interaction. *Id.*

In support of his decision, the ALJ accorded "great weight" to the opinions of the State Agency medical and psychological consultants, as he found them to be consistent with the other evidence in the record. *Id.* He also gave substantial weight to the opinion of Dr. Dennis Demby ("Dr. Demby"), the consultative examiner who inspected Ms. Eckenrode, "with the exception of the addition of environmental limitations and the imposition of a sit or stand option." *Id.* The ALJ gave minor weight to the opinions of Roger Percy ("Mr. Percy"), a nurse practitioner Ms. Eckenrode saw on a regular basis, and Dr. Simmons, to the extent that it suggested Ms. Eckrenrode's impairments met paragraph C of Listing 12.04. *Id.* The ALJ concluded that those opinions were not supported by the evidence of record. *Id.*

Based upon the testimony of the VE, the ALJ next concluded that Ms. Eckenrode could not perform any of her past work. *Id.* However, based on further VE testimony that jobs existed in significant numbers in the national economy that an individual with Ms. Eckenrode's age, education, work experience, and RFC could perform – including sorter, stock clerk, and mail clerk – the ALJ found that Ms. Eckenrode was capable of making a successful adjustment to other work during the relevant period and therefore was not disabled within the meaning of the Act. *Id.* at 26-27.

### III.   **DISCUSSION**

As set forth in the Act and applicable case law, this Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial

8

evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

Ms. Eckenrode advances five principal arguments for granting her Motion for Summary Judgment. First, she argues that the ALJ erred in giving little weight to the opinions of Mr. Percy and Dr. Simmons. Second, she alleges that the ALJ erred in determining that her condition did not meet or equal in severity Listings 12.04 and/or 12.06. Third, Ms. Eckenrode contends that the ALJ erred in determining her RFC by misconstruing the opinion of Dr. Demby. Fourth, she alleges that the ALJ improperly disregarded the testimony of the VE and posed an incomplete hypothetical question to the VE. Finally, she argues that the ALJ erred in failing to find that she was disabled pursuant to the Medical-Vocational Guidelines. The Court will address each issue in turn.

### A. The ALJ's Weighing of the Relevant Medical Opinions

A "cardinal principle" of disability determinations is that the ALJ must ordinarily give the medical opinion of a treating physician substantial weight. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Under the "treating physician doctrine," "a court considering a disability benefits claim must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). The ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). An ALJ may only reject a treating physician's assessment on the basis of contradictory medical evidence, not on speculation, credibility judgments, or lay opinion. *Id.*

As Ms. Eckenrode's treating psychologist, Dr. Simmons is an "acceptable medical source" whose opinion is normally entitled to substantial or even controlling weight. 20 C.F.R. § 416.913(a)(2). In his decision, the ALJ failed to fully credit Dr. Simmons' Psychiatric Review Technique Form ("PRTF"), which indicated that Ms. Eckenrode's psychological impairments met or medically equaled Listing 12.04. Instead, the ALJ concurred with the State Agency psychological examiner's finding that Ms. Eckenrode's mental impairments did not meet the requirements of Listing 12.04, paragraph C[4] or Listing 12.06, paragraph C[5], while Dr. Simmons' PRTF reflected that Ms. Eckenrode met Listing 12.04, paragraph C. When the opinion of a treating physician conflicts with the opinion of a non-treating, non-examining physician, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

The Court concludes that the ALJ was justified in deciding that the medical evidence of record, including evidence from Dr. Simmons' own treatment of Ms. Eckenrode, did not support his opinion in the PRTF. This factual situation strikes the Court as similar to that faced by its sister court in the Eastern District of Pennsylvania in *Colgan v. Astrue*, 2009 WL 8581179 (E.D. Pa. Aug. 11, 2009). In

---

[4] Listing 12.04, paragraph C requires a "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement.

20 C.F.R. § 404, subpt. P, app. 1.

[5] Listing 12.06, paragraph C requires a "complete inability to function independently outside the area of one's home." 20

that case, the ALJ gave little weight to a PRTF completed by the claimant's treating therapist, assessing "severe mental impairments" that he alleged equaled a Listed Impairment. *Colgan*, 2009 WL 8581179, at *3. The ALJ noted that the PRTF and the claimant's GAF score of 45 contrasted with many of the therapist's own progress notes and were not supported by the rest of the medical record. *Id.* at *3-4. The court upheld the ALJ's determination, observing that while the progress notes did contain comments such as "patient having difficulty with negative thoughts" and "anxiety level increased," they were brief and did not list severe or complicated symptoms. *Id.* at *4. Additionally, the Court noted that the claimant did not see his therapist frequently enough – about 5 times a year – for an individual suffering from serious mental health limitations. *Id.* On that basis, the court held that the ALJ correctly decided that the treating therapist's opinion in the PRTF was not entitled to substantial weight. *Id.*

In this case, substantial medical evidence in the record fails to support Dr. Simmons' PRTF. His treatment notes are comparable to those from *Colgan*, containing descriptions such as "keyed up," "tired," and "worked up about the bus schedule," along with references to past suicidal thoughts, but the most recent notes indicate much-improved mood and sleep. ECF No. 6-10 at 46-54. Dr. Simmons' assessments contain phrases such as "continued situational stressors," "racing thoughts," and "sleep disturbance." *Id.* They do not indicate any severe or debilitating symptoms supporting a GAF score of 40 or the requirements of paragraph C. Ms. Eckenrode saw Dr. Simmons 7 times in the approximately one-year span from January 2010 to January 2011 – again comparable to the claimant in

---

C.F.R. § 404, subpt. P, app. 1. In the PRTF, Dr. Simmons wrote in "moderate" over "inability to function independently outside the area of one's home." Therefore, he did not opine that Ms. Eckenrode's mental limitations met Listing 12.06.

11

*Colgan. Id.* Most strikingly, as the ALJ noted, Ms. Eckenrode has never been hospitalized for mental health reasons, providing no basis for a finding of past or future episodes of decompensation.

The Court concludes that this factual scenario is similar to that in *Colgan*, and because the medical evidence of record does not support Dr. Simmons' opinion that Ms. Eckenrode's psychological limitations met a Listed Impairment, the ALJ gave his opinion as to that particular question minimal weight for appropriate reasons. Because the ALJ limited his assessment of Dr. Simmons' opinion "to the extent that it suggests the claimant meets the 'C' criteria" and cited to and discussed the rest of Dr. Simmons' medical records and findings in his decision, the Court concludes that the ALJ gave proper weight to the remainder of Dr. Simmons' opinions.

As for Mr. Percy, who completed two Employability Assessment Forms indicating that Ms. Eckenrode was temporarily disabled for a variety of reasons, the opinion of a nurse practitioner is not an "acceptable medical source" entitled to great or controlling weight under the treating physician doctrine, as Plaintiff suggests. *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999) (citing 20 C.F.R. § 416.913). While the ALJ may consider such an opinion along with all of the other evidence presented by the claimant, disability eligibility cannot solely rest upon it. *Id* (citing 20 C.F.R. § 416.913(e)(3)). Therefore, the Court concludes that the ALJ did not err in giving Mr. Percy's opinion little weight.

### B. The ALJ's Determination that Plaintiff's Impairments did not Meet or Equal a Listed Impairment

At step three, the claimant bears the burden of presenting medical evidence to show that her impairment matches a listing or is equal in severity to a listed impairment. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000) (citing *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992)). The Supreme Court has defined this burden:

For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity in *all* the criteria for the one most similar listed impairment. A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.

*Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).

The Court concludes that substantial evidence supported the ALJ's determination that Ms. Eckenrode's impairments did not, alone or combined, match or equal Listings 12.04 or 12.06.

In his decision, the ALJ explicitly considered whether Ms. Eckenrode's mental impairments met Listings 12.04 (affective disorders) and 12.06 (anxiety related deisorders). Both Listings require a level of severity that is satisfied when a set of requirements in paragraphs A and B are present, or when the requirements in paragraph C are met. The requirements for paragraph B in Listings 12.04 and 12.06 are identical and read as follows:

> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. § 404, subpt. P, app. 1. The ALJ devoted a full paragraph to each factor, finding in accordance with the State Agency psychological examiner's report and Dr. Simmons' PRTF that Ms. Eckenrode was only mildly or moderately restricted in each category. ECF No. 6-2 at 21-22. He also found that because the record was absent of any psychiatric hospitalizations, there was no evidence of past or possible future episodes of decompensation. *Id.* at 22.

13

For reasons the Court has already addressed, the ALJ appropriately conferred little weight to Dr. Simmons' opinion in determining that Ms. Eckenrode's limitations did not meet paragraph C. Because the Listings are strictly construed against claimants, *Lee v. Astrue*, 2007 WL 1101281, at *4 (E.D. Pa. Apr. 12, 2007), and Ms. Eckenrode failed to present medical findings meeting all of the specified criteria of the Listings in question, the ALJ's decision that her impairments did not meet or equal a Listed Impairment was supported by substantial evidence.

### C. The ALJ's Residual Functional Capacity Determination

Ms. Eckenrode next argues that the ALJ erred in determining for RFC purposes that she could stand for 6 hours in an 8-hour work day where Dr. Demby's opinion, which the ALJ gave great weight, reported that she could only stand or walk for 2-4 hours in an 8-hour workday. In his decision, the ALJ did afford great weight to Dr. Demby's opinion, "with the exception of the addition of environmental limitations and the imposition of a sit or stand option." ECF No. 6-2 at 25. One of the environmental limitations the ALJ included in his RFC determination for Ms. Eckenrode was that she could only stand for 6 hours out of an 8-hour work day – a limitation found in the report of Dr. Juan Mari-Mayans ("Dr. Mari-Mayans"), the State Agency medical evaluator. ECF No. 6-10 at 3.

The resolution of this issue depends upon whether there was substantial evidence to support the ALJ's finding that Dr. Demby's assessment of Ms. Eckenrode's ability to stand for 2-4 hours in an 8-hour workday was inconsistent with the body of his report and the record evidence considered in its entirety. *Harrold v. Astrue*, 323 Fed. Appx. 114, 117 (3d Cir. 2009). Dr. Demby's consultative examination report stated that Ms. Eckenrode had chest pain, shortness of breath, wheezing, coughing, and dizziness. ECF No. 6-9 at 23. Dr. Mari-Mayans diagnosed Ms. Eckenrode with emphysema and morbid obesity and specifically considered Dr. Demby's opinion, stating that his own RFC assessment

14

partially reflected Dr. Demby's conclusions. ECF No. 6-10 at 8. However, according to Dr. Mari-Mayans, Dr. Demby "relied heavily on the subjective report of symptoms and limitations provided by the claimant," which he concluded were not supported by the medical record. *Id.* It is plain to the Court that the ALJ gave due consideration to the divergent views of Drs. Demby and Mari-Mayans, as he gave great weight to most of both of their opinions. The ALJ also included a sit/stand option every 30 minutes in Ms. Eckenrode's RFC. ECF No. 6-2 at 22. Therefore, the ALJ did not err in adopting Dr. Mari-Mayans' conclusion as to Ms. Eckenrode's ability to stand for 6 hours during an 8-hour workday, *Harrold*, 323 Fed. Appx. at 117, and the Court concludes that the ALJ's RFC determination was supported by substantial evidence.[6]

### D.     The ALJ's Hypothetical Questions

Ms. Eckenrode next argues that the ALJ failed to properly rely on the VE's response that a hypothetical person similar to Ms. Eckenrode who missed two or more days of work a month or was off-task 20 percent of the day would not be suitable for any jobs in the national economy. ALJs often pose a number of hypothetical questions to the VE, but the VE's testimony "may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Simply because a hypothetical was posed does not mean that there was sufficient evidence to support it; the ALJ ultimately relies upon only credible, medically established limitations." *Menuto v. Astrue*, 2012

---

[6] Ms. Eckenrode also claims that the ALJ erred in not finding that she was disabled pursuant to the Medical-Vocational Guidelines, found at 20 C.F.R. § 404, subpt. P, app. 2, once she was 50 years old. She grounds this claim in Dr. Demby's conclusion that she could only stand or walk for 2-4 hours in an 8-hour workday, which she alleges should lead to a finding under the Medical-Vocational Guidelines that she could only perform sedentary work, which as of age 50 would make her disabled for purposes of the Act. However, because the Court concludes that the ALJ did not err in not adopting Dr. Demby's finding as to Ms. Eckenrode's ability to stand during an 8-hour workday, her argument as to the Medical-Vocational Guidelines is moot.

15

WL 2594339, at *9 (W.D. Pa. June 13, 2012) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Before the two hypotheticals in question, the ALJ posed a hypothetical based on a person similar to Ms. Eckenrode with the environmental and other limitations he included in her RFC. These limitations were supported by evidence in the record, whereas no such evidence supported the propositions that Ms. Eckenrode would be off-task for 20 percent of the workday or absent at least two days of work per month. Plaintiff's brief offers no support for such inferences. The Court concludes that the ALJ properly disregarded the two contested hypotheticals, and that his prior hypothetical fairly encompassed all of Ms. Eckenrode's individual physical and mental impairments and was therefore supported by substantial evidence.

## IV. **CONCLUSION**

It is undeniable that Ms. Eckenrode has a number of impairments, and the Court is sympathetic and aware of the challenges she faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that she has the RFC to perform light work.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

_[signature]_
Mark R. Hornak
United States District Judge

Dated: March 3rd, 2014
cc: All counsel of record